## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMAR BENTON, | : | Civil No. 1:24-CV-00011 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| F. DEPIERO, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Before the court are Plaintiff's motion to dismiss all claims against
Defendant W. Inniss, Defendants' motion to partially dismiss the second amended
complaint, and Plaintiff's motion for leave to file amended discovery requests.
(Docs. 19, 27, 29.)  For the following reasons, the court will grant Plaintiff's
motion to dismiss all claims against Defendant Inniss, grant Defendants' motion to
dismiss in part, and deny Plaintiff's motion for leave to file amended discovery
requests.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint in January of 2024.  (Doc.
1.)  The complaint named seven defendants: (1) F. DePiero ("DePiero"), Unit
Manager at SCI-Dallas; (2) J. Rawlings ("Rawlings"), Drug/Alcohol Treatment
Specialist at SCI-Dallas; (3) P. McDonald ("McDonald"), Drug/Alcohol Treatment
Specialist Supervisor at SCI-Dallas; (4) M. Goyne ("Goyne"), Major of the Unit

Management at SCI-Dallas; (5) K. Ransom ("Ransom"), Superintendent at SCI-Dallas; (6) W. Inniss ("Inniss"), Corrections Classification Program Manager at SCI-Dallas; and (7) Ryder, Correctional Officer at SCI-Dallas. (*Id*.) The court screened the complaint pursuant to 28 U.S.C. § 1915A and dismissed all claims against Defendants Goyne, Inniss, and Ransom. (Doc. 9.) Plaintiff was granted an opportunity to file an amended complaint. (*Id*.)

The court received and docketed Plaintiff's amended complaint on February 8, 2024. (Doc. 10.) The amended complaint only brought claims against Defendants Goyne, Inniss, and Ransom. (Doc. 11.) The court sua sponte granted Plaintiff an opportunity to file a second amended complaint so as to allow Plaintiff to raise all claims against all defendants. (Doc. 12.) The court received and docketed the second amended complaint on April 2, 2024. (Doc. 13.) The second amended complaint names the original seven defendants named in the original complaint and brings claims under the First Amendment, the Fourteenth Amendment, and the Eighth Amendment. (*Id*.) This is the operative complaint in this matter.

The court directed waiver of service forms be served on the seven Defendants. (Docs. 14.) However, upon a review of the docket, it appears that no waiver of service form was forwarded to Defendant Ryder. (Doc. 15.) The six defendants who were served filed a motion to dismiss on June 7, 2024. (Doc. 19.)

2

Plaintiff responded with a brief in opposition on July 24, 2024.  (Doc. 26.)  He then filed an unsupported motion for discovery requests.  (Doc. 27.)  He also filed a motion to dismiss all claims against Defendant Inniss.  (Doc. 29.)  The six defendants filed a non-opposition to the motion to dismiss all claims against Defendant Inniss.  (Doc. 30.)

Additionally, on February 12, 2025, the six defendants filed a suggestion of death notifying the court and Plaintiff that Defendant Ransom died on January 7, 2025.  (Doc. 32.)

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at the State Correctional Institution Dallas ("SCI-Dallas") in Luzerne County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents"

attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

### A. Summary of the Second Amended Complaint

The following is a summary of the factual allegations made in the second amended complaint and attached documents. (Doc. 13.) On March 30, 2023, while Plaintiff was incarcerated at SCI-Dallas, he signed a contract to be employed

as a peer educator.  (Doc. 13-1, p. 2.)[1]  The contract required Plaintiff to be

transferred from the general population in J-Block to "unit MC" to help with

therapeutic community duties.  (*Id.*)  On March 31, 2023, Plaintiff transferred from

general population to "unit MC" and began his work duties.  (*Id.*)  Plaintiff

completed the required training and was awarded a certificate as a Peer

Assistant/Peer Educator.  (*Id.*)

On June 10, 2023, Plaintiff learned that his sister and grandmother's health

had worsened, and they were now restricted form lengthy car travel.  (*Id.*, p. 3.)

On June 12, 2023, Plaintiff had a conversation with Defendant DePiero about his

family members being unable to visit him due to the travel involved.  (*Id.*)

Plaintiff asked Defendant DePiero if he could help him file a medical hardship

transfer to SCI-Chester or SCI-Phoenix because visits to these facilities would not

require long car rides.  (*Id.*)  Plaintiff alleges that Defendant DePiero told him to

write a request regarding the matter and to have an attorney mail him the medical

documents and doctors' letters.  (*Id.*)  Plaintiff states that he sent Defendant

DePiero the request the same day.  (*Id.*)

Plaintiff alleges that Defendant DePiero responded to Plaintiff's request by

informing him to have an attorney mail in the medical documents.  (*Id.*)  Plaintiff

states that on June 29, 2023, Attorney David B. Mischak sent the medical

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

documents, doctors' letters, and attorney letter to Defendant DePiero in the U.S. Mail. (*Id.*)

On July 5, 2023, Plaintiff asked Defendant DePiero if he had received the medical documents, and Defendant DePiero confirmed that he had. (*Id.*) Defendant DePiero then told Plaintiff that he needed to meet all the requirements necessary for the transfer to occur, including being a level 2 inmate, having no misconducts within the past two years, and completing the mandatory programs. (*Id.*) Plaintiff confirmed that he met all the requirements for the transfer, and Defendant DePiero told Plaintiff to be patient because he would help when he had time. (*Id.*)

On July 10, 2023, Plaintiff asked Defendant DePiero about the transfer being filed. (*Id.*) Defendant DePiero told Plaintiff that once he was within nine months of the parole process, the transfer could not be filed. (*Id.*) Plaintiff told Defendant DePiero that in three weeks he would be within nine months of the parole process, which was scheduled for a hearing in May of 2024. (*Id.*) Defendant DePiero told Plaintiff to be patient because he still had time. (*Id.*)

On July 14, 2023, Plaintiff again asked Defendant DePiero about the transfer being filed. (*Id.*, p. 4.) Defendant DePiero again told Plaintiff that he would help him whenever he had time, and Plaintiff reminded him that in two weeks he would be within the nine months of the parole process. (*Id.*) Defendant DePiero then told

Plaintiff that it was too late to file the transfer and that he was never going to help him file the transfer.  (*Id*.)  Plaintiff reminded Defendant DePiero about his sick family members, and Defendant DePiero stated "[o]h well, life isn't fair.  So now you can file a grievance and tell them what I said and I will tell them that I'm not doing my job properly because they overwork us." (*Id*.)

Plaintiff wrote to Defendant Goyne informing him of Defendant DePiero's "cruel conduct" and submitted a grievance on July 14, 2023.  (*Id*.)  The grievance was time-stamped as received by the SCI-Dallas Superintendent's office as of July 24, 2023.  (*Id*.)

On July 24, 2023, Defendant McDonald escorted Plaintiff into her office and spoke with him about her having to transfer him back into general population and remove him from his job duties as a Peer Educator because Defendant DePiero was "raging at her over a phone conversation about Plaintiff filing a grievance . . . against him." (*Id*.)  When Plaintiff left the office, he was approached by Defendant Ryder, who told him he should not have filed the grievance and stated "[i]f it was me I would've shot your black ass with my musket on the day you get released." (*Id*.)  That same day, Plaintiff was transferred back to general population.  (*Id*., p. 5.)

On July 25, 2023, Plaintiff was summoned to Defendant DePiero's office for a meeting with him and Defendants McDonald and Rawlings.  (*Id*.)  Defendant

Rawlings told Plaintiff that he was there because they did not think he was doing a good job as a Peer Educator. (*Id*.) Defendant McDonald told him he could be fired or take a six-month probationary period from his duties. (*Id*.) Plaintiff argued that he was doing well as a Peer Educator, and Defendant Rawlings stated "[y]ou can't be a role model when you put grievances in on our Unit Manager." (*Id*.) He was also told he was "already starting off on the wrong foot if [he] want[ed] to make parole." (*Id*.)

Plaintiff returned to his cell in tears and a correctional officer referred him to the psychologist's office. (*Id*.) Plaintiff was interviewed by a psychologist, but was nervous and afraid to tell him that he feared for his life, his freedom, and further retaliation by Defendant DePiero and others. (*Id*., p. 6.) He was placed on a month-to-month psychology appointment schedule for safety measures. (*Id*.)

That same day, Defendant Goyne responded to Plaintiff's letter and informed Plaintiff that Defendant DePiero had processed Plaintiff's medical hardship transfer on July 25, 2023 and that the transfer was denied. (*Id*.)

On August 3, 2023, Plaintiff submitted a grievance against Defendants DePiero, Rawlings, McDonald, and Ryder. (*Id*.) The grievance (No. 1048255) was denied at all three levels of appeals. (*Id*.)

During August of 2023, Plaintiff submitted several requests to Defendant DePiero asking for the medical documents and letters to be returned to him. (*Id*.)

Plaintiff alleges that Defendant DePiero never responded. (*Id.*) On September 11, 2023, Plaintiff wrote to Defendant Goyne about the return of the medical documents. (*Id.*, p. 7.) Defendant Goyne informed Plaintiff that Defendant DePiero had destroyed the medical records. (*Id.*)

At psychology appointments on August 15, 2023, August 17, 2023, October 11, 2023, and October 26, 2023, Plaintiff admitted to "that he was nervous and afraid to tell them that he feared for his life and retaliation by Defendants." (*Id.*, p. 9.) Plaintiff alleges that he developed anxiety, post traumatic stress disorder, depression, and loss of sleep because of fears of retaliation. (*Id.*)

Based on these alleged facts, Plaintiff raised First Amendment retaliation claims against Defendants DePiero, Ryder, McDonald, and Rawlings, Fourteenth Amendment due process claim against Defendant DePiero, Eighth Amendment cruel and unusual punish claim against Defendant DePiero and Ryder, and Eighth Amendment deliberate indifference claim against Defendants McDonald, Rawlings, Goyne, Ransom, and Inniss. (*Id.*, pp. 8–11.)

### B. Plaintiff's Motion to Dismiss All Claims Against Defendant Inniss Will Be Granted.

The court received and docketed Plaintiff's motion to dismiss all claims against Defendant Inniss on August 29, 2024. (Doc. 29.) The motion concedes that Defendant Inniss was not in a supervisory position at SCI-Dallas and was not in a position to correct unconstitutional conduct of others. (*Id.*) On August 13,

2024, Defendants filed a non-opposition statement requesting that the claims against Defendant Inniss be dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (Doc. 30.)

Under Fed. R. Civ. P. 41(a)(1)(A)(i), a "plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Such dismissals are without prejudice unless otherwise stated in the motion seeking dismissal. Fed. R. Civ. P. 41(a)(1)(B).

The court will grant Plaintiff's motion and dismiss all claims against Defendant Inniss without prejudice.

### C. Defendants' Motion to Dismiss Will Be Granted In Part and Denied In Part.

Defendants' motion to dismiss argues that Defendants Ransom and Goyne must be dismissed for lack of personal involvement, that Plaintiff fails to state First Amendment retaliation claims, that Plaintiff lacks standing to assert criminal claims, that the destruction of a third party's paperwork does not violate the Eighth Amendment, and that all claims against Defendants in their official capacity should be dismissed under the Eleventh Amendment. (Doc. 20.) The court will address each of these arguments in turn.

### 1. Defendants Ransom and Goyne

Defendants argue that claims against Defendants Ransom and Goyne should be dismissed for lack of personal involvement. (Doc. 20.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Supervisory liability under § 1983 utilizes the same standard as municipal liability. *See Carter v. City of Philadelphia,* 181 F.3d 339, 356 (3d Cir. 1999). A supervisor will only be liable for the acts of a subordinate if he fosters a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights. *See Id. at* 357. To establish supervisory liability, a plaintiff must show that (1) a superior officer failed to employ a specific supervisory practice; (2) the existing custom created an unreasonable risk of injury in the absence of the specified supervisory practice; (3) the supervisor was aware that the risk existed; (4) the supervisor was indifferent to

the risk; and (5) the underlying violation resulted from the failure to employ the supervisory practice. *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 216 (3d Cir. 2005) (*citing Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989)).

The second amended complaint alleges that Defendant Goyne knew of Defendant DePiero's allegedly unconstitutional behavior and was deliberately indifferent. (Doc. 13-1, p. 10.) However, the second amended complaint fails to alleged any policy or custom on the part of Defendant Goyne that amounts to deliberate indifference. Knowledge of the actions alone is insufficient to establish supervisory liability.

Turning to Defendant Ransom, Plaintiff alleges that he had knowledge of Defendant DePiero's allegedly unconstitutional activities because he reviewed and responded to the grievances that Plaintiff filed against Defendant DePiero and failed to order Defendant DePiero to stop all further retaliatory behavior. (Doc. 13-1, p. 10.) This is insufficient to support a § 1983 claim. "Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement." *Rode v. Dellarciprete,* 845 F.2d 1195, 1208 (3d Cir. 1988) (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *see also Brooks v. Beard*, No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or

failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Therefore, the court will dismiss the claims against Defendants Goyne and Ransom without prejudice. Because the claims against Defendant Ransom will be dismissed, the court is not required to address the suggestion of death. (Doc. 32.)

### 2. First Amendment Retaliation Claims

In the second amended complaint, Plaintiff raises First Amendment retaliation claims against Defendants DePiero, Ryder, McDonald, and Rawlings. (Doc. 13-1, p. 8.) However, Defendants concede that the First Amendment retaliation claim asserted against Defendants DePiero, McDonald, and Rawlings concerning the transfer of Plaintiff's housing assignment from MC block to J block (general population) will proceed to discovery. (Doc. 20, p. 1.) The remaining retaliation claims include those against Defendant DePiero "vindictively denying his medical hardship transfer application, and destroying the medical documents belonging to Plaintiff and his ailing family members," those against Defendant Ryder for "harassing him and using threatening language," and those against Defendants McDonald and Rawlings for removing "Plaintiff from his job duties as a Peer Assistant on housing unit MC because Plaintiff exercised his right to file a grievance against Defendant DePiero," and harassment "when they conspired with Defendant DePiero to have Plaintiff summoned to Defendant DePiero's office to

14

intimidate and interrogate Plaintiff about filing of his grievance." (Doc. 13-1, p. 8.)

A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.

### i. Verbal Harassment

Here, the second amended complaint does not allege that he suffered a sufficient adverse action to establish a retaliation claim based on any verbal harassment by any of the named defendants. Verbal harassment is not sufficient to be considered an adverse action in a retaliation claim. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (nonprecedential); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) ("[T]hreats alone do not constitute retaliation ... the claim relating to the threat failed."); *Snider v. Alvarez*, No. 18-cv-801, 2020 WL 6395499, at *17 & n.166 (M.D. Pa. Nov. 2, 2022) (collecting cases); *Cooper v. Sherman*, No. 17-cv-2064, 2019 WL 2408973, at *7 (M.D. Pa. June 7, 2019) ("It is

well settled, however, that verbal threats or verbal harassment ... do not constitute

adverse action for purposes of establishing a First Amendment retaliation claim.");

*Bartelli v. Lewis*, No. 04-cv-908, 2005 WL 2406048, at *2 (M.D. Pa. Sept. 29,

2005) ("[V]erbal threats do not constitute an 'adverse action' and, therefore, do not

fulfill a requisite element of a retaliation claim[.]").  Therefore, any retaliation

claims for verbal harassment will be dismissed.[2]

## ii. Destruction of Medical Records

Defendants argue that the destruction or confiscation of his family's medical

records are not sufficient adverse action to support a retaliation claim.  (Doc. 20, p.

18.)  The sufficient adverse action requirement "is not especially demanding.

'[U]nless the claimed retaliatory action is truly inconsequential, the plaintiff's

claim should go to the jury.'"  *Carter v. Slater*, No. 1:19-cv-000112, 2021 WL

5605289, *6 (W.D. Pa. Nov. 30, 2021) (quoting *Jacobs v. Beard*, 172 Fed. Appx.

452, 455 (3d Cir. 2006)).  The Court in *Carter* held that the confiscation of legal

materials that resulted in the loss of the ability to assert claims constituted a

sufficiently adverse action to support a First Amendment retaliation claim.  *Id*.

Defendants argue that the destruction of the third-party medical records is not

comparable to the confiscation of legal materials.  The court disagrees.  Plaintiff

---

[2] The court acknowledges that Defendant Ryder has not been served in this action.  Nonetheless, the court will dismiss the First Amendment retaliation claim against Defendant Ryder pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted.

alleges that the loss of the medical documents precluded him from refiling an application for a medical hardship transfer once he again became eligible. (Doc. 3-1, p. 9.) Therefore, in accord with *Carter*, the court will not dismiss these claims.

### iii. Medical Hardship Transfer

Plaintiff argues that Defendant DePiero retaliated against him by denying his medical hardship transfer. (Doc. 13-1, p. 8.) However, the complaint alleges that Defendant DePiero changed his mind about the medical hardship transfer on July 14, 2023. (Doc. 13-1, p. 4.) Further, Plaintiff's request to staff demonstrates that he filed a request checking on the status of his medical hardship transfer on July 14, 2023, and received notice that it was denied on July 25, 2023: "Mr. DePiero did process you for a … Md hardship transfer to Phoenix or Chester. He received the processed vote sheet back today. The request was denied." (Doc. 13-3, p. 3.) Plaintiff filed a staff request on July 14, 2023 complaining of Mr. DePiero's refusal to help him earlier that day. (Doc. 13-3, p. 4.) Plaintiff's grievance against Defendant DePiero was filed on July 24, 2024. (Doc. 13-2, p. 2.) Nothing alleged in the complaint or in the attached documents supports a finding that Plaintiff filed any complaint against Defendant DePiero prior to Defendant DePiero refusing to help with the medical hardship transfer. Therefore, Plaintiff cannot establish a causal connection between the denial of the medical hardship transfer and the complaints filed against Defendant DePiero in furtherance of the retaliation claim.

Any retaliation claim for refusing to assist in the medical hardship transfer will be dismissed.

The court acknowledges that the medical hardship transfer was not denied until July 25, 2023.  (Doc. 13-3, p. 3.)  However, nothing in the complaint alleges that Defendant DePiero was the deciding individual.  Instead, the response to the staff request appears to support the idea that Defendant DePiero simply received the vote sheet denying the transfer.  (*Id*.)  Therefore, any retaliation claim against Defendant DePiero for the denial of the medical transfer will be dismissed with prejudice.

### iv. Loss of Employment

Plaintiff further alleges that Defendants DePiero, McDonald, and Rawlings retaliated against him by removing him from his job duties as a Peer Assistant. (Doc. 13-1, p. 8.)  Prisoners do not have a protected interest in prison employment. *See James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir.), *cert. denied*, 493 U.S. 870 (1989); *see also, Howard v. Coupe*, 2023 WL 2207592 *2 (3d Cir. Feb. 24, 2023). Nonetheless, a prisoner cannot be fired from or passed over for a job in retaliation for exercising a constitutional right.  *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 300 n.76 (3d Cir. 2016) *citing Rauser*, 241 F.3d at 333.

Here, Plaintiff was terminated after he filed a grievance against Defendant DePiero, but prior to him filing any grievance against Defendants McDonald and

Rawlings.  This court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity.  *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity).   For this reason, Plaintiff is precluded from raising a retaliation claim against Defendants McDonald and Rawlings for the job loss "because Plaintiff exercised his right to file a grievance against Defendant DePiero."  (Doc. 13-1, p. 8.)  This same logic precludes a retaliation claim against Defendants McDonald and Rawlings for the transfer of Plaintiff from MC Unit to J-Block in general population.  While Defendants do not challenge this portion of the retaliation claim, the court will dismiss it pursuant to 28 U.S.C. § 1915A.

As to the loss of employment being a retaliatory action by Defendant DePiero, Defendants argue that he would have been suspended from the position

regardless of the grievance because the justification for the suspension was job performance. (Doc. 20, p. 28.) While the documents attached to the complaint state that Plaintiff lost his job due to poor performance, the court acknowledges that Plaintiff's grievances consistently challenged this determination. (Doc. 13-2.) Therefore, the court will allow Plaintiff's retaliation claim against Defendant DePiero for the loss of his employment to proceed to discovery.

### 3. Fourteenth Amendment Due Process Claim

Plaintiff alleges that Defendant DePiero violated his Fourteenth Amendment rights to due process by intentionally destroying his family members' medical documents. (Doc. 13-1, p. 9.)

The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" *See* U.S. Const. amend. XIV. Nonetheless, an individual may not assert a claim under section 1983 for even an intentional deprivation of the individual's property by a state employee, "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Plaintiff cannot assert a plausible due process claim here because Pennsylvania law provides him with an adequate state remedy. *See Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act, 42 Pa. C.S. §§ 8541–8546, provides an adequate

remedy for willful deprivation of property claim).  In addition, "[t]he Pennsylvania Department of Corrections['] . . . grievance procedure provides an adequate post-deprivation remedy," and this procedure "forecloses [Plaintiff's] due process claim."  *Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (per curiam) (citing *Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000)).

### 4.  Eighth Amendment Cruel and Unusual Punishment

Plaintiff alleges that Defendants DePiero and Ryder violated his Eighth Amendment right to be free from cruel and unusual punishment by verbally harassing him.  (Doc. 13-1, p. 9.)

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. Amend. VIII.  Prison conditions constitute cruel and unusual punishment if they result in a serious deprivation of the prisoner's basic human needs.  *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  Only conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's

necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'" *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)).

Plaintiff's alleged verbal threats do not rise to the level of depravity required in *Palakovic*. Therefore, the Eighth Amendment cruel and unusual punishment claims will be dismissed.[3]

### 5. Criminal Liability

Plaintiff references the criminal code with respect to his allegations of verbal harassment. (Doc. 13-1, pp. 8–9.) To the extent that Plaintiff is attempting to assert criminal actions against Defendants, such claims will be dismissed with prejudice. Private citizens lack standing to initiate criminal proceedings. *United States v. Wegeler*, 941 F.3d 665, 668 (3d Cir. 2019) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Therefore, any attempt to raise criminal actions against Defendants in this civil complaint will be dismissed with prejudice.

---

[3] The court acknowledges that Defendant Ryder is not a party to the pending motion to dismiss. However, the court will dismiss the Eighth Amendment claims against him pursuant to 28 U.S.C. § 1915A.

### 6. Eleventh Amendment

Plaintiff's surviving retaliation claims against Defendant DePiero in his official capacity for any monetary relief will be dismissed.

Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978). In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc.*, 730 F.3d at 318. Because Defendant DePiero is a state official, in his official capacity as an employee of the Department of Corrections, the claims against him in his official capacity for damages are really claims against the Commonwealth and, as such, are barred by the Eleventh Amendment.

A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate states' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity, *see* 42

P.C.S.A.§ 8521(b), and 42 U.S.C. § 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979).

Although the Commonwealth of Pennsylvania has expressly reaffirmed its immunity from this type of suit in federal court, the state has waived sovereign immunity in nine limited circumstances. These exceptions to the general grant of immunity to the Commonwealth and its employees are for negligent acts involving: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. § 8522(b). The exceptions to the Commonwealth's sovereign immunity must be strictly construed because the legislature waived immunity only in specific situations. *Moser v. Heistand*, 681 A.2d 1322, 1326 (Pa. 1996) (citing *Snyder v. Harmon*, 562 A.2d 307 (1989)).

None of the above exclusions apply to the remaining First Amendment retaliation claims.[4] Thus, claims against Defendant DePiero for damages in his official capacity are barred by the Eleventh Amendment. *See, e.g.*, *Ulrich v. Corbett*, 614 F. App'x 572, 574 (3d Cir. 2015) (holding that Pennsylvania

---

[4] 42 Pa. Cons. Stat. § 8522 exclusions apply to "claims for damages *caused by* . . . the care, custody or control of *personal property* in the possession or control of Commonwealth parties." (*emphasis added*). Therefore, the third exception does not apply to the destruction of the medical records in the possession of Commonwealth parties.

governors "enjoy Eleventh Amendment immunity from suit for acts taken in their official capacities"); *Gantz v. Wolf*, No. 3:18-CV-02418, 2019 WL 342126, at *2 ("Gantz's claims for money damages against Defendant Wolf in his official capacity are barred by the Eleventh Amendment."); *Hampton v. Wetzel*, No. 1:15-CV-897, 2015 WL 2405062, at *1-2 (M.D. Pa. May 20, 2015) (finding official capacity claim against governor in § 1983 suit barred by Eleventh Amendment).

The Eleventh Amendment does not bar claims against a state official in his or her individual or personal capacity. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). Nor does it bar claims against a state official in his or her official capacity for prospective injunctive relief. *See Ex parte Young*, 209 U.S. 123 (1908). Therefore, the claims for monetary relief against Defendant DePiero in his official capacity are dismissed.

### D. Plaintiff's Motion For Leave to File Amended Discovery Requests Will Be Denied.

Plaintiff filed a motion for leave to amend his discovery requests in August of 2024. (Doc. 27.) All requests for discovery must be served on the parties and not through the court. Fed. R. Civ. P. 34(a). Therefore, the court will deny the motion.

### CONCLUSION

For the stated reasons, the court will dismiss all claims against Defendants Inniss, Ryder, McDonald, and Rawlings. All claims of criminal liability will be

dismissed.  Likewise, the court will dismiss the First Amendment retaliation claim based on the denial of medical hardship transfer and the Fourteenth Amendment due process claim against Defendant DePiero.  The only surviving claims include First Amendment retaliation claims against Defendant DePiero for the destruction of the medical records, the transfer of Plaintiff's housing assignment, and the loss of employment.  The court will also dismiss the motion for leave to file amended discovery.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: March 3, 2025